IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BARBARA CONNELL, *individually, and as surviving spouse of Teddy Max Connell, deceased*; and GREGORY SCOTT WILLIAMS, *as executor of the estate of Teddy Max Connell, deceased*,

    Plaintiffs,

v.

METRO CORRAL PARTNERS, LLC, *a foreign limited liability company*,

    Defendant.

Civil Action No.
1:19-cv-2710-SDG

**OPINION AND ORDER**

This matter is before the Court on Defendant Metro Corral Partners, LLC's (Metro) Motion for Summary Judgment [ECF 60]. For the reasons stated below, the motion is **GRANTED**. This action is **DISMISSED WITH PREJUDICE**.

**I.   Background**

    **a.   Procedural History**

Plaintiffs Barbara Connell and Gregory Scott Williams (collectively, Plaintiffs) initiated this action in the State Court of Gwinnett County, Georgia on April 25, 2019.[1] They allege that the decedent, Teddy Max Connell (Connell), was seriously injured because of Metro's negligence. In May 2017, Connell fell while at

---

[1]   ECF 1-1.

a Golden Corral restaurant and broke his leg. Metro owns the restaurant.[2] Plaintiffs assert that this fall caused Connell's death later that month, and seek to hold Metro liable.[3] Plaintiffs assert a cause of action for negligence, and ask for damages for the full value of Connell's life and for his personal injuries, as well as punitive damages.[4]

Barbara Connell is Connell's surviving spouse, and sues in that capacity as well as in her individual capacity.[5] Williams sues in his capacity as the executor of Connell's estate.[6] Metro timely removed on June 14, 2019, asserting diversity jurisdiction.[7] Metro's members are both citizens of Florida.[8] Plaintiffs are citizens of the State of Georgia.[9] The amount in controversy exceeds $75,000.[10]

b. **Undisputed Facts**

As discussed further below, because Plaintiffs have not responded to Metro's statement of undisputed facts, the Court has reviewed the record evidence

---

[2] ECF 60, at 8.
[3] ECF 1-1, ¶ 1.
[4] *See generally* ECF 1-1.
[5] *Id.* at 1 & ¶ 2.
[6] *Id.* at 1 & ¶ 3.
[7] ECF 7.
[8] ECF 6, at 1–2.
[9] ECF 1, ¶ 7; ECF 60-1, at 5 (B. Connell Dep. Tr. at 16:23–17:16).
[10] ECF 1-1, at 6.

and concludes that Metro's statement of undisputed material facts is properly supported. *Reese v. Herbert*, 527 F.3d 1253, 1269 (11th Cir. 2008) ("[A]fter deeming the movant's statement of undisputed facts to be admitted pursuant to Local Rule 56.1, the district court must then review the movant's citations to the record to 'determine if there is, indeed, no genuine issue of material fact.'") (citation omitted).

On May 5, 2017, Connell and his family went to a Golden Corral restaurant in Newnan, Georgia.[11] They were seated at a table in "Section 300" of the restaurant's dining area.[12] Connell waited at the table while his family went to the buffet; when his step-daughter returned to the table, Connell walked over to the buffet.[13] His wife saw him as he was returning and she is the only person who witnessed the fall.[14] As Connell approached the table where his family was sitting, Barbara Connell saw her husband "clip" his foot on the bottom of an unoccupied

---

[11] ECF 60-5, ¶ 1.
[12] *Id.* ¶ 2.
[13] *Id.*
[14] *Id.* ¶ 12.

chair.[15] Connell fell and fractured his right femur.[16] He was treated for his injuries, including undergoing a surgical procedure.[17] Thereafter, he was transferred to a rehabilitation facility.[18] On May 24, 2017, Connell suffered a gastrointestinal bleed and died six days later.[19] He was 85 years old at the time of his death.[20] The official causes of death were a heart attack and coronary artery disease.[21]

Before his fall, Connell passed the area where the chair was located at least once, and probably twice.[22] There is no evidence showing that Connell lacked knowledge of the chair.[23] He was not distracted and nothing obstructed his view of the chair, which was in plain view.[24] No one moved the chair before his fall.[25]

---

[15] *Id.;* ECF 60-1, at 20 (B. Connell Dep. Tr. 76:7–12). Metro describes Connell's fall as taking place "prior to entering the aisle between the tables." ECF 60, at 9. Plaintiffs dispute that description, claiming that Connell fell when he "rounded the corner and entered the seating area." ECF 65, at 7. The Court finds this dispute is immaterial to the issues before it.

[16] ECF 60-5, ¶ 4.

[17] *Id.* Plaintiffs object to this description, asserting that Connell underwent two surgeries as a result of his fall. ECF 65, at 7 ¶ 2. The Court finds this dispute is immaterial to the issues before it.

[18] ECF 60-5, ¶ 5.

[19] *Id.*

[20] ECF 60-1, at 34 (B. Connell Dep. Tr. 132:6–8).

[21] ECF 65-4, at 8.

[22] ECF 60-5, ¶ 3.

[23] *Id.* ¶ 6.

[24] *Id.* ¶¶ 7–10, 13.

[25] *Id.* ¶ 11.

**II.   Applicable Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324. The non-movant "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**III.   Discussion**

Metro asserts that it is entitled to summary judgment in its favor on several grounds. First, it argues that Plaintiffs have failed to develop evidence that there was a dangerous condition.[26] Next, Metro asserts that, because the chair was open and obvious, its knowledge of the alleged hazard was not superior to Connell's.[27]

---

[26]   ECF 60, at 13–15.

[27]   *Id.* at 15–18.

Third, Metro contends that the "prior traversal rule" prevents its liability.[28] Finally—and most critically for purposes of this Order—Metro argues that Plaintiffs cannot carry their *prima facie* burden to show negligence because they have no expert to testify about (among other things) Connell's injuries, medical treatment, or cause of death.[29] Plaintiffs have not presented anything to show there is a dispute of material fact on any of the elements necessary to establish negligence, causation in particular. This failure is fatal to their claim.

### a. Plaintiffs fail to show any material facts in dispute.

Plaintiffs did not respond to Metro's statement of undisputed material facts as required by the local rules. LR 56.1(B)(2)(a), NDGa. Instead, they objected to parts of the statement of facts summarized in Metro's supporting brief.[30] The Court must therefore consider Metro's recitation of the facts to be undisputed. *Id.* 56.1(B)(2)(a)(2). Even if the Court were to credit Plaintiffs' improper objections, however, the outcome would be no different. One of Plaintiffs' objections is a conclusion of law, not a statement of fact.[31] *Id.* 56.1(B)(1)(c) ("The Court will not

---

[28] *Id.* at 18–20.

[29] *Id.* at 20–22. *See also* ECF 79, at 11–13.

[30] ECF 65, at 6–7.

[31] *Id.* at 7 ¶ 3 ("Plaintiff[s] dispute Defendant's recitation (p. 10) of Plaintiffs' Complaint as it has omitted paragraph 15, which states: 'Defendants were negligent in the selection of the chairs provided to invitees as said chairs were hazardous in Defendant's business environment.'").

consider any fact . . . stated as an issue or legal conclusion . . . ."). The other two matters are ultimately not material because they do nothing to show causation.[32]

Moreover, the additional facts on which Plaintiffs attempt to rely in their opposition brief must be disregarded. The Court "cannot consider any fact set forth only in a brief and not in a response to the movant's statement of facts or in the respondent's own statement of additional material facts." *Lewis v. Residential Mortg. Sols.*, No. 1:17-CV-1422-ELR-WEJ, 2018 WL 5276221, at *2 (Aug. 31, 2018) (citations omitted), *report and recommendation adopted*, 2018 WL 5276190 (N.D. Ga. Oct. 16, 2018), *aff'd*, 800 F. App'x 830 (11th Cir. 2020). *See also Richardson v. Jackson*, 545 F. Supp. 2d 1318, 1326 (N.D. Ga. 2008) ("Accordingly, to the extent that either party includes any fact in a brief that is *not* included in the party's Statement of Material Facts (or in its response to the opposing party's Statement of Material Facts), the Court is not permitted to consider such fact in resolving any pending motion for summary judgment.") (emphasis in original); LR 56.1(B)(2)(b) & (B)(1)(d), NDGa ("The Court will not consider any fact . . . set out only in the brief" and not in a statement of additional material facts).

The Eleventh Circuit has explained why this mandate is not a mere elevation of form over substance:

---

[32] *Id.* at 6–7 ¶¶ 1–2 (disputing the exact location where Connell tripped and the number of surgeries Connell had after his accident).

> Local Rule 56.1 protects judicial resources by "mak[ing] the parties organize the evidence rather than leaving the burden upon the district judge." The rule also streamlines the resolution of summary judgment motions by "focus[ing] the district court's attention on what is, and what is not, genuinely controverted."
>
> . . . .
>
> The proper course in applying Local Rule 56.1 at the summary judgment stage is for a district court to disregard or ignore evidence relied on by the respondent—but not cited in its response to the movant's statement of undisputed facts—that yields facts contrary to those listed in the movant's statement. That is, because the non-moving party has failed to comply with Local Rule 56.1—the only permissible way for it to establish a genuine issue of material fact at that stage—the court has before it the functional analog of an unopposed motion for summary judgment.

*Reese*, 527 F.3d at 1268 (citations omitted). *See also Libel v. Adventure Lands of Am., Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007) ("Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense.").

      **b.**    **Plaintiffs cannot establish causation.**

A negligence claim contains four essential elements: "[A] duty, a breach of that duty, causation, and damages." *Collins v. Athens Orthopedic Clinic, P.A.*, 307 Ga. 555, 557 (2019). For simple negligence cases, the general rule is that a plaintiff "need not produce expert evidence on causation." *Cowart v. Widener*, 287 Ga. 622, 626 (2010). For example, a jury may "infer a causal connection between an accident

and a plaintiff's injuries based on the sequence of events." *Cooper v. Marten Transp., Ltd.*, 539 F. App'x 963, 968 (11th Cir. 2013) (collecting cases). But there are important exceptions to this rule: "[E]ven in simple negligence cases, plaintiffs must come forward with expert evidence to survive a defense motion for summary judgment, where 'medical questions' relating to causation are involved." *Cowart*, 287 Ga. at 627.

In *Cowart*, the Georgia Supreme Court clarified that "most 'medical questions' relating to causation are perfectly capable of resolution by ordinary people using their common knowledge and experience, without the need for expert testimony." *Id.* at 628. As examples, that court identified the following situations in which lay people with ordinary knowledge could determine causation without expert testimony: "That a stab wound penetrating entirely through the heart causes death"; "[w]hether a blow to the head could cause death"; and "whether an automobile collision caused a backache later the same day." *Id.* at 628 (collecting cases). Thus, "where the symptoms complained of emerge immediately or soon after the event alleged to have caused them, and it is common knowledge that such an event is one that could cause that kind of injury, a reasonable jury could draw conclusions about proximate cause." *Bruce v. Classic Carrier, Inc.*, No. 1:11-cv-01472-JEC, 2014 WL 1230231, at *7 (N.D. Ga. Mar. 24, 2014). *See also Baulding v. United States*, No. 4:13-cv-129-HLM, 2014 WL 12497023,

at *6 (N.D. Ga. Sept. 5, 2014) ("[A] lay jury could determine without expert testimony that tripping and falling can cause a knee injury.").

But expert evidence *is* necessary "where the issue of causation presents 'specialized medical questions,' *i.e.*, where the link between a defendant's actions and the plaintiff's injury is beyond common knowledge and experience and presents medical questions that can be answered accurately only by witnesses with specialized expert knowledge." *Cooper*, 539 F. App'x at 967–68 (citing *Cowart*, 287 Ga. at 628). For instance, "[a] causal connection, requiring expert medical testimony, must be established where the potential continuance of a disease is at issue." *Jordan v. Smoot*, 191 Ga. App. 74, 75 (1989). *Cf. Bruce*, 2014 WL 1230231, at *6 ("[I]f there is evidence that the complained-of injury is a preexisting condition, the plaintiff must produce medical testimony explaining why the tortious event aggravated the prior condition to survive a motion for summary judgment.").

### *i.* **Expert medical testimony was necessary to show causation.**

Plaintiffs argue that they only have to meet their burden of proof to establish negligence and expert testimony is not required for them to do so.[33] Expert testimony would not be necessary for Plaintiffs to survive summary judgment if their argument were that Connell's fall caused his broken leg.[34] *See, e.g.*, *Baulding*,

---

[33] ECF 65, at 23–25.

[34] *Id.* at 24.

2014 WL 12497023, at *6. But that isn't what they argue. Instead, their contentions are far more attenuated and unsupported by any material facts. Plaintiffs argue that Connell died because of a bleeding ulcer, even though the bleed had been cauterized two days before his death, because its "cause of death" expert speculated that the ulcer could have started bleeding again.[35] Without a statement of disputed facts, however, there is nothing to contradict Metro's recitation of the facts, which make no connection between Connell's fall and his death.[36] And Plaintiffs' theory directly conflicts with the death certificate.[37]

The official causes of death—the "[f]inal disease or condition resulting in death"—were "myocardial infarction" [i.e., heart attack] and "coronary artery disease."[38] While the death certificate indicates that the heart attack immediately led to Connell's death, he had suffered from the contributing coronary artery disease for "years."[39] "Duodenal ulcer with hemorrhage" is listed as a "significant condition[ ] contributing to death."[40]

---

[35] *Id.* at 10, 24.

[36] ECF 60-5, ¶ 5.

[37] *Id.*

[38] ECF 65-4, at 8. *See* 8 ATTORNEYS MEDICAL ADVISOR § 86:24 (defining a myocardial infarction to mean a heart attack).

[39] *Id.*

[40] *Id.*

A death certificate is admissible under Fed. R. Evid. 803(9) as a "record of a birth, death, or marriage," if it is "reported to a public office in accordance with a legal duty." Further, under Georgia law, "a death certificate properly completed by a medical examiner is considered *prima facie* evidence of both the death itself and the cause of the death." *Bryant v. Georgia*, 270 Ga. 266, 271 (1998) (citing *Thomas v. Georgia*, 257 Ga. 24, 25 (1987)). Although that presumption can be rebutted, Plaintiffs have not identified any disputed material facts at all, let alone ones that can call into question the official report of the factors that caused Connell's death. There is therefore no basis for the Court to conclude that there is a material dispute of fact. Plaintiffs cannot defeat summary judgment when they have presented no evidence that Metro caused Connell's myocardial infarction or coronary artery disease.

Further, Plaintiffs cannot support their theory about the "actual" cause of Connell's death because it presents specialized medical questions. How Connell's fall led to a bleeding ulcer 19 days later, that then led to his death six days after that, at the age of 85, is not within a lay person's common knowledge and experience. This can "be answered accurately only by witnesses with specialized expert knowledge." *Cooper*, 539 F. App'x at 967–68 (citing *Cowart*, 287 Ga. at 628). This is particularly true here where Plaintiffs acknowledge that Connell had

previously had gastrointestinal bleeds.[41] *See, e.g., Jordan*, 191 Ga. App. at 75; *Bruce*, 2014 WL 1230231, at *6. In short, there is no disputed issue of material fact demonstrating that Metro caused Connell's unfortunate death. As a result, the Court need not address Metro's remaining grounds in support of summary judgment.

**IV.   Conclusion**

Metro's Motion for Summary Judgment [ECF 60] is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in Defendant's favor, **DISMISS** this action **WITH PREJUDICE**, and close this case.

**SO ORDERED** this 28th day of March, 2022.

Steven D. Grimberg
United States District Court Judge

---

[41]   *Id.*